IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOUGLAS G. RICHARDSON,<br><br>        Plaintiff,<br><br>v.<br><br>POND5, Inc. and Shutterstock, Inc.<br><br>        Defendant(s). | Case No. 1:22-cv-04963-GWG |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF, DOUGLAS RICHARDSON'S MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES AND DISMISS DEFENDANTS' COUNTERCLAIMS IN DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS**

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................5

**BACKGROUND OF THE CASE** ...................................................................................................5

    Plaintiff's Allegations in the Complaint…………………………………………………….5

    Prior Litigation………………………………………………………………….……………..7

    Notice. …………………………………………………………………….…..……………...7

    Defendants Infringing Acts………………………………………...…………………………8

    Procedural History……………………………………………….…...……………………..8

**ARGUMENT** ..................................................................................................................................9

I. THE STANDARD OF REVIEW ON A MOTION TO DISMISS UNDER FRCP Rule 12(b)(6) …..…...9

II. THE STANDARD OF REVIEW ON A MOTION TO STRIKE AFFIRMATIVE DEFENSES UNDER

    FRCP Rule 12(f)………………………………………………………………………….…10

III. Defendants' Affirmative Defenses and Defendants' Counterclaims, set forth in Defendants' Amended Answer and Counterclaims, Fail to Provide any Factual Basis for their Allegations and, Accordingly these Pleadings Should be Stricken and Dismissed Under Rules 12(b)(6) and 12(f) of The Federal Rules of Civil Procedure, Respectively……………………………………………………………...…11

    1. The First and Twenty-First Affirmative Defenses have no factual support, whatsoever………….11
    2. The First Counterclaim alleges non-infringement of the Claims of the Patents-in-suit without factual support……………………………………………………………………………12
    3. The Second through Sixth Affirmative Defenses directly mirror the First Counterclaim, alleging that Defendants have not infringed each of the patents-in suit, without providing a factual basis for their allegation of lack of infringement……………………..13
    4. The Second Counterclaim alleges invalidity of the Claims of the Patents-in-suit, without any factual support for the Counterclaimants' allegations…..……………………………14
    5. The Second Counterclaim does not provide any reason (*i.e.,* facts) to allege why the claims in the patents-in-suit are invalid over the cited patents..………………………….15
    6. Likewise, in their Seventh through Eleventh and Nineteenth Affirmative Defenses, Defendants make the same baseless allegations as made in the Second Counterclaim……………16
    7. The Twelfth through Eighteenth and Twentieth Affirmative Defenses likewise are conclusory and lack a factual basis for Defendants' Allegations……………………..17
    8. The Third Counterclaim should be dismissed as lacking any factual support………..........……..19

    **CONCLUSION**................................................................................................................19

TABLE OF AUTHORITIES

**Cases**

Ashcroft v. lqbal,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ……………………………………….........10, 11

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955 (2007)................................................................................. 10, 11

Credit Suisse First Boston, LLC v. Intersop Comm'n AG,
    407 F.Supp.2d 541 (S.D.N.Y. 2006)……………………………………………...…11

DiFolco v. MSNBC Cable L.L.C.,
    622 F.3d 104 (2d Cir. 2010)………………………………………………...…10

In re Mission Bay Ski & Bike, Inc.,
Nos. 07 B20870 & 08 A 55, 2009 WL 2913438 (Banker. N.D. Ill. Sept. 9, 2009)…………………11

Kelly Brown v. Winfrey,
    717 F.3d 295 (2d Cir. 2013). ................................................................................................10

Matsumura v. Benihana Nat') Corp.,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008)……………………………………………….5

Microsoft Corp. v. i4i Limited Partnership,
    131 S. Ct. 2238 (2011)……………………………….………………………………..15

Radio Corp. v. Radio Laboratories,
    293 U.S. 1 (1934) ………………………….………………………………………15

**Statutes and Rules**

Fed. R. Civ. P. Rule 8……………………………………………………...……………11

Fed. R. Civ. P. Rule 12(b)(6) ………..……………………………………...…5, 8, 9, 10, 11

Fed. R. Civ. P. Rule 12(f)………………………………………….…………...……… 5, 9, 10, 11

35 U.S.C. § 101………………………………………………………………………………..16

35 U.S.C. § 102……………………………………………….……………………………..14, 16

35 U.S.C. § 103……………………………………………………………………………14, 16

35 U.S.C. § 111………………………………………………………………..……..…14, 16, 18

35 U.S.C. § 112………………………………………………………………………………14, 16

35 U.S.C. § 271……………………………………………………………………………….13, 17

35 U.S.C. § 282……………………………………………………………………………..……15

35 U.S.C. § 285……………………………………………………………………………..…….11

Pursuant to Federal Rules of Civil Procedure Rule 12(f) and Rule 12(b)(6), Plaintiff, Douglas G. Richardson ("Plaintiff" or "Douglas Richardson,") by and through his attorneys, respectfully submits this Memorandum of Law in support of Plaintiff's Motion to Strike Defendants' Affirmative Defenses and Dismiss Defendants' Counterclaims set forth in Defendants' Amended Answer and Counterclaims.

**BACKGROUND OF THE CASE**[1]

**Plaintiff's Allegations in the Complaint**: A Complaint was filed by Plaintiff, Douglas Richardson, on June 13, 2022 initially against Defendant Pond5, Inc., and once it was discovered that Shutterstock, Inc. had purchased Pond5, Inc., a Second Amended Complaint was filed against both Defendants, Pond5, Inc. and Shutterstock, Inc. ("Pond5" and "Shutterstock" or Collectively "Defendants") on August 9, 2022 (Doc. 20). Mr. Doug Richardson, the inventor of the patents-in-suit, brought this case against Pond5, Inc. and Shutterstock Inc. for infringement of U.S. Patent Nos. **7,388,587** ("the '587 patent"), **7,629,977** ("the '977 patent"), **8,035,644** ("the '644 patent"), **11,232,768** ("the '768 patent") and **11,263,998** ("the '998 patent") (collectively, the "patents-in-suit"), copies of which are attached to the Complaint as Exhibits 1, 3, 5, 7 and 9, respectively.

In 2005, Mr. Richardson invented the "Cinegif" (which is currently commonly known as a Cinemagraph), an image having an isolated area of motion (within a still photograph) that draws the viewer's eye to a particular area of the image (Complaint para. 15). An example of which can

---

[1] As is proper in the context of a motion to dismiss, the facts recited herein are based upon the allegations set forth in Defendants' Amended Answer and Counterclaims, which, for purposes of the present Motion only, must be accepted by the Court as true. *See, Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008). Nothing in this Memorandum should be construed as an acknowledgment that those allegations are true; indeed, Plaintiff, Douglas Richardson, disputes many of the allegations in the Amended Answer and Counterclaims.

5

be seen in Mr. Richardson's correspondence with Pond5 shown in paragraph 25, where the wine is constantly streaming from the Bottle to the Glass, while everything else in the image is still.

In the Complaint, Plaintiff alleges that Pond5 and Shutterstock actively induced infringement of a select number of "method claims" of the patents-in-suit, including claims 1, 3, 4, 5 and 6 of the **'587 Patent** (Complaint ¶ 74, 173), claims 1, 2-4, 5, 6, and 8 of the '977 Patent (Complaint ¶ 90, 188), claims 1, 2, 3, 5, and 6 of the **'644 Patent** (Complaint ¶ 116, 212), claims 1, 4, 7, 15, and 17 of the **'768 Patent** (Complaint ¶ 132, 227), and claims 8-14 of the **'998 Patent** (Complaint ¶ 158, 251). Specifically, Pond5 and Shutterstock have been actively inducing infringement of Mr. Richardson's Patent Claims by promoting its infringement on You Tube and other social media, providing tutorials on how to make infringing Cinemagraphs utilizing Mr. Richardson's patented method (Complaint at paras 34-37 and 51-55).

In those allegations, Plaintiff describes, with specificity, the content of Pond5's and Shutterstock's marketing of their software products (beginning for Pond5 at Complaint ¶ 29-¶ 35 and for Shutterstock at Complaint ¶ 47-¶ 53), which provide step-by-step instructions how to practice Mr. Richardson's patented methods. Plaintiff also provides detailed Claims Charts, as Exhibits to the Complaint, comparing the steps in the method claims to Pond5's and Shutterstock's published instructions (see, Complaint Exs. 2, 4, 6, 8 and 10 for Pond5 and Exs. 11-15 for Shutterstock).

Mr. Richardson discovered that Pond5 and Shutterstock have been violating Mr. Richardson's rights in his patented technology since at least 2015/2016, and have been promoting and selling infringing Cinemagraphs on their websites and in social media (Complaint at paras 21-22, 29-32, 45, 47-50). Specifically, Shutterstock and Pond5 have also been directly infringing a select number of "apparatus claims" of the patents-in-suit, including claims 8, 10, and 12 of the **'644 Patent** (Complaint ¶¶ 103-112 for Pond5 and 201-209 for Shutterstock) and claims 1-7 of the **'998 Patent** (Complaint ¶¶ 145-154 for Pond5 and 240-248 for Shutterstock). Plaintiff also

6

provides detailed Claims Charts (as Exhibits to the Complaint), comparing the features of the product claims of the **'644 and '998 Patents** to Pond5's and Shutterstock's published Cinemagraph products that are promoted, licensed and sold on their websites (*see*, Complaint Exs. 6 and 10 for Pond5, and Exs. 13 and 15 for Shutterstock).

**Prior Litigation**: There were also 3 other lawsuits filed to enforce Mr. Richardson's patents between July 24, 2017 and August 9, 2022, which were filed against: 1. *Samsung Electronics* in the ED of Texas 6:17-cv-428; 2. *Motorola* in the ND of Illinois 1:21-cv-01840; as well as a case against 3. *FujiFilm* 1:21-cv-07917, filed in the SD of New York. All of these cases have settled amicably with a license to the patents-in-suit. In addition, there was one other settlement against another major corporation, which did not necessitate the filing of a Complaint.

**Notice**: Mr. Richardson provided Notice to Pond5 of his Patents and demonstrated his patented technology in communications with Mr. Tom Bennett between June of 2011 and 2017. At that time Mr. Bennett was the acting CEO and co-founder of Pond5. Mr. Bennett initially responded to these communications but did not express an interest in the technology or negotiate with Mr. Richardson. (Complaint at paras 23-28). Mr. Richardson's attorney also wrote to Pond5's Vice President of Product development, who was also a co-founder of the company, seeking to sell or license Mr. Richardson's patents but did not receive a response. Mr. Richardson thereafter discovered that Pond5, had been marketing and selling images that included what Pond5 refers to as a "Cinemagraph" since at least as early as July 14, 2016, which continues to date (Complaint at para 29).

Shutterstock purchased Pond5 on May 11, 2022 for $210 million in cash, see: https://investor.shutterstock.com/news-releases/news-release-details/shutterstock-acquirespond5-worlds-largest-video-marketplace (Complaint at para. 10). Accordingly, it has assumed Pond5's knowledge and willfulness by stepping into Pond5's shoes and continuing to sell Cinemagraphs to date (Complaint at paras 10 and 47-62 and Counts VI-X).

7

**Defendants Infringing Acts**: Shutterstock and Pond5 have been promoting and selling Cinemagraphs on their websites and in social media, and practicing Mr. Richardson's patented technology since at least 2015/2016 (Complaint at paras 29-33 and 47-50). Pond5 and Shutterstock have been actively inducing infringement of Mr. Richardson's Patent Claims by promoting its infringement on You Tube and other social media, along with providing tutorials on how to make Cinemagraphs utilizing Mr. Richardson's patented method (Complaint at paras 34-37 and 51-55). It is Mr. Richardson's position that both Pond5's and Shutterstock's infringing marketing and sales of his patented technology is unjustified, willful and wonton (*e.g.*, see Complaint at Count I, paragraph 77 and Count VI paragraph 176, as well as the corresponding allegations in Counts II-V and Counts VII-X).

**Procedural History:** Defendants filed their Answer to the Second Amended Complaint with their Counterclaim against Douglas Richardson on December 8, 2022 (Doc. 41). In a Joint Letter filed on December 15, 2022, at Section III, Plaintiff notified Defendants and the Court that he "*anticipates the filing [of] a motion to dismiss the D's Counterclaims under Rule 12(b)(6) FRCP. The basis for the motion is that the Counterclaims lack factual support and specificity. They are merely unsupported boilerplate allegations and fail to allege causes of action upon which relief may be granted.*" In addition, during the telephone conference held before Hon. Judge Woods on December 21, 2022, counsel for Douglas Richardson reiterated that he planned to file the Motion to Dismiss under Rule 12(b)(6) and discussed the proposed filing of a Motion to Strike the Affirmative Defenses with the Court. Defendants Counsel represented that Defendants will be filing an Amended Answer to cure the deficiencies in the Counterclaims and Affirmative defenses.

An Amended Answer was filed on December 29, 2022 (Doc. 45). Plaintiff filed a Letter Motion for a premotion conference to discuss filing a Motion to Strike the Affirmative Defenses and to Dismiss the Counterclaims on January 18, 2023 (Doc. 46), which was

8

subsequently Endorsed by the Court on January 19, 2023 (Doc. 47), the Order denying Plaintiff's request for a pre-motion conference, granting Plaintiff's application for leave to file a motion to dismiss Defendants' counterclaims and to strike Defendants' Affirmative Defenses, and setting a briefing schedule.

## ARGUMENT

In this motion, Plaintiff requests the Court to dismiss Defendants' Counterclaims and to strike Defendants' Affirmative Defenses (the "CCs" and "ADs") in the Amended Answer and Counterclaims (Doc. 45), as the CCs and ADs lack any factual support or specificity. Instead, the Counterclaims are merely unsupported boilerplate allegations of legal theories and fail to allege causes of action upon which relief may be granted. Counterclaims 1 and 2 are merely Counterclaimants' unsupported affirmative defenses that have been relabeled as Counterclaims. Likewise, Counterclaim 3 is baseless and is being asserted without **any** factual support or evidence to support Defendants' claims or defenses.

Likewise, Douglas Richardson has requested that Defendants' conclusory affirmative defenses be stricken by the Court pursuant to Federal Rule of Civil Procedure Rule 12(f), which allows the Court to *"strike from a pleading an insufficient defense or a redundant, immaterial, impertinent or scandalous matter."* Fed. R. Civ. P. 12(f)

Accordingly, Plaintiff, Douglas Richardson, respectfully requests that the Court dismiss Defendants' Counterclaims and strike Defendants' Affirmative Defenses in the Amended Answer and Counterclaims in their entirety, without leave to replead.

I. **THE STANDARD OF REVIEW ON A MOTION TO DISMISS UNDER FRCP Rule 12(b)(6).**

On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations

9

in the complaint [Affirmative Defenses or Counterclaims] as true and draws all reasonable inferences in the claimant's favor. *Kelly Brown v. Winfrey*, 717 F.3d 295, 304 (2d Cir. 2013). To survive a motion to dismiss, a party's claim must plead "*enough facts to state a claim to relief that is plausible on its face.*" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is facially plausible "*when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). The Counterclaim lacks the "*factual matter ... to `state a claim to relief that is plausible on its face.'*" *Iqbal*, 556 U.S. 662. "*In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b) (6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.*" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

In this case, the Counterclaims lack the "*factual matter ... to `state a claim to relief that is plausible on its face'.*" *Iqbal*, 556 U.S. 662. They cannot survive a motion to dismiss, because they fall far short of containing "*sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'*" and the claims lack facial plausibility because Defendants have not "*pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*" *Id.*, quoting *Twombly*, 550 U.S. at 570. Defendant's Counterclaims do not come close to satisfying these pleading requirements and thus should be dismissed.

II. **THE STANDARD OF REVIEW ON A MOTION TO STRIKE AFFIRMATIVE DEFENSES UNDER FRCP Rule 12(f).**

Upon a Motion to strike the Defendants' conclusory affirmative defenses, under

Federal Rule of Civil Procedure ("F.R.Civ.P") Rule12(f), the Court may *"strike from a pleading an insufficient defense or a redundant, immaterial, impertinent or scandalous matter."* Fed.R.Civ.P. Rule 12(f). The Conclusory assertions of Defendants' Affirmative Defenses cannot satisfy the relevant pleading standard under Rule 8  F.R.Civ.P, and *Bell Atl. Corp. v. Twombly*, and *Ashcroft v. Iqbal*, supra. *Credit Suisse First Boston, LLC v. Intersop Comm'n AG*, 407 F.Supp.2d 541, 546 (S.D.N.Y. 2006) ("*the distinction in this case is largely semantic, since the standard by which 12(f) and 12(b)(6) motions are evaluated are "`mirror image[s]'."*); *In re Mission Bay Ski & Bike, Inc.*, Nos. 07 B20870 & 08 A 55, 2009 WL 2913438, at \*6 (Banker. N.D. Ill. Sept. 9, 2009) (*applying Twombly and Iqbal to strike insufficient affirmative defenses*).

**III.     Defendants' Affirmative Defenses and Defendants' Counterclaims, set forth in Defendants' Amended Answer and Counterclaims, Fail to Provide any Factual Basis for their Allegations and, Accordingly these Pleadings Should be Stricken and Dismissed Under Rules 12(b)(6) and 12(f) of The Federal Rules of Civil Procedure, Respectively.**

In this case Defendants' Amended Answer and Counterclaim ("AAC"), filed on December 29, 2022 (Doc. 45) allege the following:

1. The First and Twenty-First Affirmative Defenses have no factual support, whatsoever, and state as follows:

**The First Affirmative Defense:** "The Second Amended Complaint fails to state a claim on which relief can be granted."

**The Twenty First Affirmative Defense:** "Plaintiff's case is not exceptional under 35 U.S.C. § 285."

As these are bald assertions of legal theories, with **no factual basis** or reason given for these boilerplate allegations, they should be stricken, out of hand.

11

    2.    <u>The First Counterclaim</u> alleges non-infringement of the Claims of the Patents-in-suit without factual support.

There is no factual support or reason given for any of Counterclaimants' allegations of Non-infringement. *See* the First Counterclaim, set out as follows:

"***FIRST COUNTERCLAIM: DECLARATION OF NONINFRINGEMENT***

*7. Counterclaimants incorporate by reference the preceding paragraphs of these Counterclaims and the Answer and Defenses.*

*8. Counter-Defendant alleges that Counterclaimants' products infringe U.S. Patent Nos. 7,388,587 ("the '587 patent"), 7,629,977 ("the '977 patent"), 8,035,644 ("the '644 patent"), 11,232,768 ("the '768 patent") and 11,263,998 ("the '998 patent") (collectively, the "patents-in suit"). Counter-Defendant's allegations created a judiciable case and controversy between the parties.*

*9. Counterclaimants' products do not infringe the claims of the patents-in-suit.*

*10. Counterclaimants are online service providers that host content created and submitted by non-party users.*

*11. Counterclaimants do not create the images hosted on their platforms and therefore do not practice any of the claims asserted in the patents-in-suit.*

*12. Counterclaimants do not direct or control their platforms' users' creation of images.*

*13. Counterclaimants do not form joint enterprises with users of their platforms.*

*14. Counterclaimants did not have actual knowledge of the patents-in-suit prior to Counter-Defendant's filing of the Complaint in this action.*

*15. Counterclaimants did not know, and do not know, whether any images or other content submitted by users of their platforms practice any of the claims set forth in the patents-in suit.*

*16. On information and belief, some or all of the allegedly infringing images submitted by users of Counterclaimants' platforms were created via alternative means and methods that do not practice any claims set forth in the patents-in-suit.*

*17. Counterclaimants never intended for users of their platforms to infringe the patents-in-suit.*

*18. In light of the foregoing, Counterclaimants have not committed any act of*

12

*infringement relative to the patents-in-suit.*

*19. Counterclaimants request a declaration from this Court that they do not infringe any valid claim of the patents-in-suit directly, indirectly, contributorily and/or by inducement, literally and/or under the doctrine of equivalents, and that their actions are not in violation of 35 U.S.C. § 271."*

There is **no factual support** for any of these allegations. There is no analysis of the asserted claims, nor a comparison of the claims asserted in the patents-in-suit to the Defendants' accused methods and products to base their allegations of non-infringement in the First Counterclaim.

3. <u>The Second through Sixth Affirmative Defenses</u> directly mirror the First Counterclaim, alleging that Defendants have not infringed each of the patents-in suit, without providing a factual basis for their allegation of lack of infringement.

There is no analysis of the asserted claims nor a comparison to the Defendants' accused methods and products to base their allegation of non-infringement. Defendant's merely make the same statement in each of these Affirmative Defenses, that they do not infringe the patents-in-suit, without providing a factual basis to support their allegations. This is in stark contrast to the Plaintiff's allegations in the Second Amended Complaint, which provide detailed factual allegations and support, as to how the Defendants infringe the claims of the patents-in-suit, and are further supported by the attached claims comparison charts. *See* the Second through Sixth Affirmative Defenses, set out below:

"<u>**AS AND FOR A [SECOND though SIXTH] AFFIRMATIVE DEFENSE**</u>
*Defendants have not infringed and do not infringe, either directly or indirectly, any valid and enforceable claim of U.S. Patent No. **[**7,388,587 ("the '587 patent"), 7,629,977 ("the '977 patent"), 8,035,644 ("the '644 patent"), 11,232,768 ("the '768 patent") and 11,263,998 ("the '998 patent").**]** Defendants are online service providers that host content created and submitted by non-party users. Defendants do not create the images hosted on their platforms and therefore do not practice any of the claims asserted in the patents-in-suit. Defendants do not direct or control*

13

*their platforms' users' creation of images. Defendants did not have actual knowledge of the patents-in-suit prior to Plaintiff's filing of the Complaint in this action. Defendants did not know, and do not know, whether any images or other content submitted by users of their platforms practice any of the claims set forth in the patents-in-suit. On information and belief, some or all of the allegedly infringing images submitted by users of Defendants' platforms were created via alternative means and methods that do not practice any claims set forth in the patents-in-suit. Defendants never intended for users of their platforms to infringe the patents-in-suit."*

4. <u>The Second Counterclaim</u> alleges invalidity of the Claims of the Patents-in-suit, without any factual support for the Counterclaimants' allegations.

In addition, there is no analysis of the asserted claims nor a comparison of the disclosure of the asserted prior art to claims at issue, to base their allegation of invalidity in the Second Counterclaim. *See* the Second Counterclaim, which is reproduced below:

**"<u>SECOND COUNTERCLAIM: DECLARATION OF INVALIDITY</u>**

20.   *Counterclaimants incorporate by reference the preceding paragraphs of these Counterclaims and the Answer and Defenses. Counterclaimants seek a declaration that the claims of the patents-in-suit are invalid under 35 U.S.C. §§ 102, 103, and/or 112 in view of, alone or in combination, at least Graphics Interchange Format ("GIF") existing since at least 1987[1], U.S. Patent No. 7,650,058 to Garoutte ("Garoutte"), and/or U.S. Patent No. 7,034,833 to Epshteyn ("Epshteyn").*

21.   *The patents-in-suit relate to methods for providing animations for use in electronic communications, e.g. emails. The animations described by the patents-in-suit are still images, which have isolated portions or features that are animated. Animation is well known in the prior art, as is layering frames on a particular background. More specifically, the patents-in-suit disclose layering a video upon a designated background, which in the case of the patents-in-suit is merely the background upon which the video was taken.*

22.   *All of the patents-in-suit are continuation-in-parts of each other dating back to the original U.S. Provisional Patent Application Ser. No. 60/670,402, filed April 12, 2005. Thus, the patents-in-suit have substantially similar specifications, including figures, with added limitations in support of each subsequent continuation-in-part.*

23.   *On information and belief, Plaintiff disclosed, used in public, sold, or otherwise made available to the public the invention covered by the patents-in-suit more than one year prior to the filing of his first patent application under 35 U.S.C. § 111.*

14

  24. *In light of the foregoing, Counterclaimants are entitled to a declaration by the Court that each claim of the patents-in-suit are invalid.*

---

[1] Plaintiff alleges he invented the "Cinegif" in 2005, which is approximately one year after most patents covering GIF technology expired."

  5. <u>The Second Counterclaim</u> does not provide any reason (*i.e.,* facts) to allege why the claims in the patents-in-suit are invalid over the cited patents.

In their Second Counterclaim Defendants reference prior art patents that were considered by the US Patent and Trademark Office ("USPTO) Examiner during the prosecution of the '998 and '768 patents as a basis for the Defendants' allegations of invalidity, and over which patent protection was granted by the USPTO Examiner. These prior art patents appear on the <u>References Cited</u> section of both the '998 and '768 patents and enjoy a statutory "Presumption of Validity" over the cited prior art under 35 USC § 282. The Supreme Court addressed the presumption of validity in 2011, *Microsoft Corp. v. i4i Limited Partnership*, 131 S. Ct. 2238 (2011) decision, confirming that the standard of proof for invalidity is clear and convincing evidence. The Supreme Court concluded that the presumption of validity codified the pre-1952 standard set forth in opinions, such as, *Radio Corp. v. Radio Laboratories*, 293 U.S. 1 (1934).

  The Supreme Court stated that by the time Congress enacted § 282, "the presumption encompassed not only an allocation of the burden of proof but also an imposition of a heightened standard of proof." *i4i*, 131 S. Ct. at 2246. The Supreme Court then upheld the Federal Circuit's articulation that "a defendant seeking to overcome [the presumption of validity] must persuade the fact finder of its invalidity defense by clear and convincing evidence." *Id.* at 2243.

  However, even if the patents-in-suit did not enjoy such a presumption, counterclaimants do not provide any reason (*i.e.,* facts) to allege why the claims in the

15

patents in suit are invalid over these patents. No claim comparison charts are presented, and no reason why the disclosure of these patents either anticipates (under *35* U.S.C. *§* 102), or renders obvious (under *35* U.S.C. §103), the claims of the patents-in-suit. The Counterclaimants might as well have cited an encyclopedia or dictionary, and made the same arguments as in the Second Counterclaim.

Moreover, counterclaimants do not present any reason why the claims of the patents-in-suit are invalid under 35 U.S.C. § 112. Such baseless allegations should be dismissed out of hand, as entirely lacking merit. Furthermore, counterclaimants do not present any factual basis for their unfounded allegation in paragraph 23 of the Second Counterclaim, which alleges:

*"On information and belief, Plaintiff disclosed, used in public, sold, or otherwise made available to the public the invention covered by the patents-in-suit more than one year prior to the filing of his first patent application under* 35 U.S.C. § 111."

Again, such baseless allegations should be dismissed out of hand, as entirely lacking merit.

6. Likewise, in their <u>Seventh through Eleventh and Nineteenth Affirmative Defenses</u>, Defendants make the same baseless allegations as made in the <u>Second Counterclaim</u>.

The unsupported allegations of the Second Counterclaim are repeated verbatim in the Second through Eleventh Affirmative Defenses. Defendants also add an allegation of invalidity based on 35 U.S.C. §101, without providing any factual basis for such allegation. *See* the Seventh through Eleventh and Nineteenth Affirmative Defenses, set out below:

<u>"AS AND FOR A [SEVENTH-ELEVENTH and NINTEENTH] AFFIRMATIVE DEFENSE[S]</u>

*The claims of the ['587, '977, '644, '768 and '998] patent are invalid for failing to comply with one or more provisions of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§101, 102, 103, and/or 112. For example, the ['587, '977, '644, '768 and '998] patent*

16

*is invalid in view of, alone or in combination, at least Graphics Interchange Format ("GIF") existing since at least 1987, U.S. Patent No. 7,650,058 to Garoutte ("Garoutte"), and/or U.S. Patent No. 7,034,833 to Epshteyn ("Epshteyn"). The patents-in-suit relate to methods for providing animations for use in electronic communications, e.g. emails. The animations described by the patents-in-suit are still images, which have isolated portions or features that are animated. Animation is well known in the prior art, as is layering frames on a particular background. More specifically, the patents-in-suit disclose layering a video upon a designated background, which in the case of the patents-in-suit is merely the background upon which the video was taken.*

*In addition, all of the patents-in-suit are continuation-in-parts of each other dating back to the original U.S. Provisional Patent Application Ser. No. 60/670,402, filed April 12, 2005. Thus, the patents-in-suit have substantially similar specifications, including figures, with added limitations in support of each subsequent continuation-in-part. On information and belief, Plaintiff disclosed, used in public, sold, or otherwise made available to the public the invention covered by the patents-in-suit more than one year prior to the filing of his first patent application under 35 U.S.C. § 111."*

7. The <u>Twelfth through Eighteenth and Twentieth Affirmative Defenses</u> likewise are conclusory and lack a factual basis for Defendants' Allegations.

As the Twelfth through Eighteenth and the Twentieth Affirmative Defenses are entirely conclusory and lack a factual basis for Defendants' Allegations, they should be stricken out of hand as entirely lacking merit. *See* the Twelfth through Eighteenth and Twentieth Affirmative Defenses, set out below:

### "AS AND FOR A [TWELFTH-SIXTEENTH] AFFIRMATIVE DEFENSE

*As a result of the proceedings in the Patent Office during prosecution of the application that resulted in the ['587, '977, '644, '768 and '998] patent, Plaintiff is estopped from asserting that Defendants have directly or indirectly infringed any claim of the ['587, '977, '644, '768 and '998] patent, in any manner under 35 U.S.C. §271, willfully or otherwise, and Plaintiff cannot rely on the reading of other related patents. For example, all of the patents-in-suit are continuation-in-parts of each other dating back to the original U.S. Provisional Patent Application Ser. No. 60/670,402, filed April 12, 2005. Thus, the patents-in-suit have substantially similar specifications, including figures, with added limitations in support of each subsequent continuation-in-part. On information and belief, Plaintiff disclosed, used in public, sold, or otherwise made available to the public the invention covered by the patents-in-suit more than one year prior to the filing of his first*

17

*patent application under 35 U.S.C. § 111.*

### AS AND FOR AN SEVENTEENTH AFFIRMATIVE DEFENSE

*Plaintiff's claims are barred because there is no causal connection between any purported conduct of Defendants and any alleged damages that Plaintiff contends he has sustained. Defendants are online service providers that host content created and submitted by non-party users. Defendants do not create the images hosted on their platforms and therefore do not practice any of the claims asserted in the patents-in-suit. Defendants do not direct or control their platforms' users' creation of images. Defendants did not have actual knowledge of the patents-in-suit prior to Plaintiff's filing of the Complaint in this action. Defendants did not know, and do not know, whether any images or other content submitted by users of their platforms practice any of the claims set forth in the patents-in-suit. On information and belief, some or all of the allegedly infringing images submitted by users of Defendants' platforms were created via alternative means and methods that do not practice any claims set forth in the patents-in-suit. Defendants never intended for users of their platforms to infringe the patents-in-suit.*

### AS AND FOR AN EIGHTEENTH AFFIRMATIVE DEFENSE

*The Second Amended Complaint fails because the Defendants have conducted themselves at all times in good faith, with a reasonable belief that their actions did not constitute a violation or infringement of any other person or entity's rights. Defendants are online service providers that host content created and submitted by non-party users. Defendants do not create the images hosted on their platforms and therefore do not practice any of the claims asserted in the patents-in-suit. Defendants do not direct or control their platforms' users' creation of images. Defendants did not have actual knowledge of the patents-in-suit prior to Plaintiff's filing of the Complaint in this action. Defendants did not know, and do not know, whether any images or other content submitted by users of their platforms practice any of the claims set forth in the patents-in-suit. On information and belief, some or all of the allegedly infringing images submitted by users of Defendants' platforms were created via alternative means and methods that do not practice any claims set forth in the patents-in-suit. Defendants never intended for users of their platforms to infringe the patents-in-suit.*

### AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE

*Defendants have not willfully infringed any valid claim of the '587, '977, '644, '768, or '998 patents as pled in the Prayer for Relief of Plaintiff's Complaint. Defendants are online service providers that host content created and submitted by non-party users. Defendants do not create the images hosted on their platforms and therefore do not practice any of the claims asserted in the patents-in-suit. Defendants do not direct or control their platforms' users' creation of images. Defendants did not have actual knowledge of the patents-in-suit prior to Plaintiff's filing of the Complaint in this action. Defendants did not know, and do not know, whether any images or other content submitted by users of their platforms practice any of the claims set forth in the patents-in-suit. On information and belief, some or all of the allegedly infringing images submitted by users of Defendants' platforms were created via alternative means and methods that do not practice any*

*claims set forth in the patents-in-suit. Defendants never intended for users of their platforms to infringe the patents-in-suit."*

8. The Third Counterclaim should be dismissed as lacking any factual support. *See* the Third Counterclaim, set out as follows:

***"THIRD COUNTERCLAIM: DECLARATION OF EXCEPTIONAL CASE***

*1. Counterclaimants incorporate by reference the preceding paragraphs of these Counterclaims and the Answer and Defenses.*
*2. On information and belief, and as set forth above, Counter-Defendant knows or should know that Counterclaimants' products do not infringe the patents-in-suit.*
*3. On information and belief, and as set forth above, Counter-Defendant knows or should know that each claim of the patents-in-suit are invalid.*
*4. Notwithstanding the foregoing, Counter-Defendant filed suit without a reasonable basis for asserting patent infringement.*
*5. Counterclaimants seek a declaration declaring an exceptional case and awarding attorneys' fees to Counterclaimants."*

No factual support is provided for the allegations in the Third Counterclaim. All statements are made "upon information and belief," and accordingly it should be dismissed, as baseless.

**CONCLUSION**

Because the Defendants' Affirmative Defenses and Counterclaims do not provide any factual basis for each of their allegations in their Affirmative Defenses and Counterclaims (for example: How do the Defendants' products not infringe? How are the patents-in-suit invalid? How does the complaint lack reasonable basis?), Plaintiff, Douglas Richardson respectfully requests that the Court strike the Defendants' Affirmative Defenses and dismiss the Defendants' Counterclaims, without leave to amend.

                                                      Respectfully submitted,

Dated: February 17, 2023                     By: /Alan M. Sack/
                                                         Alan M. Sack
                                                    **SACK IP Law p.c.**

| 445 Park Avenue | 6800 Jericho Tpk. |
|---|---|
| 9th Floor | Suite 120W |
| New York, NY 10022 | Syosset, NY 11791 |
| Tel: (212) 500-1310 | Tel: (516) 393-5960 |

                                                Direct Cell: (516) 510-3061
                                                Email: Alan.Sack@sack-ip.com

                                                *Attorneys for Plaintiff, Douglas Richardson*